FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTHONY D.<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | NO: 1:24-CV-03016-LRS<br><br>ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER PROCEEDINGS |

BEFORE THE COURT are the parties' briefs. ECF Nos. 8, 16.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Ryan Lu.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's brief, ECF No. 8, is granted and Defendant's brief, ECF No. 16, is denied.

ORDER - 1

**JURISDICTION**

Anthony D. (Plaintiff) filed for disability insurance benefits and supplemental security income on October 20, 2016, alleging in both applications an onset date of December 15, 2015, which was later amended to August 1, 2016. Tr. 411-25. Benefits were denied initially, Tr. 298-306, and upon reconsideration, Tr. 311-24. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 14, 2018. Tr. 132-56. On October 11, 2018, the ALJ issued a fully favorable decision finding Plaintiff disabled. Tr. 279-86.

Subsequently, the Appeals Council ordered the case remanded to the ALJ because the favorable decision was not supported by substantial evidence and based on error. Tr. 287-95. A second hearing was held on August 20, 2020, Tr. 157-22, and on September 14, 2020, the ALJ issued an unfavorable decision. Tr. 14-32. The Appeals Council denied review. Tr. 1-6. Plaintiff filed a complaint with the United States District Court for the Eastern District of Washington and on June 30, 2022, the undersigned remanded the case for further administrative proceedings. Tr. 1265-74.[1]

---

[1] The matter was remanded because the ALJ relied heavily on a medical record which the parties agreed was not about Plaintiff. Tr. 1273. The incorrect medical record was stricken from the case record. Tr. 873.

ORDER - 2

A third hearing was held on October 17, 2023, Tr. 1211-32, and the ALJ issued an unfavorable decision on November 16, 2023. Tr. 1185-1210. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 24 years old on the alleged onset date and 32 years old at the time of the most recent ALJ decision.  Tr. 1200.  He earned a GED. Tr. 137. He has work experience as a touch-up painter, janitor, lubrication servicer, tire repairer, livestock farm worker, material hander and stores laborer. Tr. 1215. He last worked in 2015 or 2016 until he was terminated because he was unable to work the number of days they needed him. Tr. 1216-17. He had a spinal fusion in 2018 and recovery took two to three years. Tr. 1217. He had complications with healing and lost a lot of leg strength. Tr. 1220-21. He has a degenerative disease in his spine and scoliosis. Tr. 1218.

Plaintiff testified his Addison's disease[2] and Ehlers Danlo syndrome now cause him to be unable to work.  Addison's disease causes him to need to rest after

_____

[2] Addison's disease is also known as primary adrenal insufficiency. The adrenal glands make too little of the hormone cortisol and sometimes make too

ORDER - 3

doing some work like laundry. Tr. 1222. He can push himself, but that means he is in extreme pain and he will be "down" for multiple days afterward. Tr. 1222. During times of increased physical or emotional stress, his body does not produce enough stress hormone so he will "hit a wall" and has no energy even to talk. Tr. 1223. This happens about once a week and lasts from one to four days. Tr. 1223. During a flare up, he mostly sleeps. Tr. 1224. He also has depression and panic disorder. Tr. 1225.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

---

little of another hormone called aldosterone. Symptoms may include extreme tiredness, dizziness or fainting upon standing, hypoglycemia, upset stomach or diarrhea, pain in the abdomen, muscle cramps, weakness, and widespread pain or joint pain. *See* https://www.mayoclinic.org/diseases-conditions/addisons-disease/symptoms-causes/syc-20350293.

ORDER - 4

citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

ORDER - 5

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

ORDER - 6

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national

ORDER - 7

economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2016, the amended alleged onset date.  Tr. 1191.  At step two, the ALJ found that Plaintiff had the following severe impairments: Addison's disease and lumbar spine disorder.  Tr. 1191.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the

ORDER - 8

listed impairments.  Tr. 1193.  The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work with the following additional limitations:

> can never climb ladders, ropes, or scaffolds; can perform other postural activities on a frequent basis; must avoid concentrated exposure to hazards, such as unprotected heights; is limited to simple, repetitive tasks; should not be required to perform fast-paced, high-quota production work; and can adapt to simple, occasional workplace changes.

Tr. 1194.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 1200.  At step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as table worker, call-out operator, and surveillance system monitor.  Tr. 1201.  Thus, the ALJ determined that Plaintiff has not been disabled, as defined in the Social Security Act, from August 1, 2016, through the date of the decision.  Tr. 1202.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 6.  Plaintiff raises the following issues for review:

ORDER - 9

1. Whether the ALJ properly considered Plaintiff's symptom testimony;

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the step five finding is supported by substantial evidence.

ECF No. 8 at 2.

**DISCUSSION**

**A.      Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  Social Security Ruling 16-3p, 2017 WL 5180304, at *2 (effective October 25, 2017).  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what

ORDER - 10

symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).

"The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017); 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *2.

ORDER - 11

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms are not consistent with the medical and other evidence. Tr. 1195. The ALJ gave two reasons for finding Plaintiff's symptom statements less persuasive: (1) his symptom allegations are inconsistent with his activities; and (2) his symptom allegations are inconsistent with the medical evidence. As discussed below, the Court concludes the ALJ's finding is legally insufficient.

First, the ALJ found Plaintiff's symptom allegations are not supported by his activities. Tr. 1197. An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Even if the claimant experiences some difficulty or pain, his daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ noted Plaintiff testified that he has no energy, is tired all the time, and that just going grocery shopping wipes him out for days. Tr. 1197. The ALJ contrasted this with Plaintiff's May 2019 report that he likes being outdoors, playing with his dogs, hiking, and camping. Tr. 1197 (citing Tr. 1045). However, Plaintiff's statement of activities he enjoys does not indicate how often or to what degree Plaintiff participates in those activities. In 2020, Plaintiff testified that he

ORDER - 12

camped with his family "occasionally" and "not as much" because his wife had to do all the set-up and tear-down by herself because he was "not much help." Tr. 196. This does not undermine his testimony about his limitations. Similarly, the ALJ noted Plaintiff's August 2020 report to a provider that he "keeps busy" doing chores, exercising, and taking care of his dogs. Tr. 1197 (citing Tr. 1627). However, in 2018 Plaintiff testified he could do chores 1-2 days per week. Tr.145. In 2020, he testified he worked out with five-pound weights, stretched his back daily, and took a 20-minute walks three times a week as suggested by his doctor. Tr. 188. He testified that if he was under stress, he would be in physical pain and become extremely tired, such that he was unable to go for his walks. Tr. 188.  The activities cited by the ALJ were either qualified by Plaintiff's testimony or simply are not inconsistent with his alleged limitations.

Additionally, the ALJ observed that there is no evidence of muscle atrophy despite Plaintiff's "allegation of being bedridden much of the time." Tr. 1197. But the ALJ's characterization of Plaintiff's testimony is incorrect. Plaintiff never stated he was "bedridden." He testified that before his back fusion surgery in 2018, he had daily pain and "was spending most days in bed." Tr. 183. Furthermore, an absence of supposedly correlating evidence is not the same as inconsistencies in the evidence. And there is no basis in the record to conclude that muscle atrophy would be an expected symptom of Plaintiff's conditions, especially since he is not

ORDER - 13

"bedridden." The ALJ's finding regarding Plaintiff's daily activities is not a clear and convincing reason supported by substantial evidence.

Second, the ALJ found the objective evidence is not consistent with and does not support the degree of disabling severity alleged. Tr. 23. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 9th Cir. 1989). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, but it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Because the ALJ's only other reason for discounting some of Plaintiff's symptom testimony is based on error, and because inconsistency with the objective evidence cannot be the sole basis of the finding, the ALJ's determination that regarding Plaintiff's symptom statements is based on legal error.

**B. Medical Opinions**

For claims filed before March 27, 2017, the evaluation of medical opinions is weighed based on the relationship of the physician to the claimant. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195,

ORDER - 14

1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Id. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

In January 2017, Joseph Vickers, M.D., wrote a letter stating that he had been Plaintiff's primary care physician for just over a year. Tr. 749. Dr. Vickers noted that Plaintiff was diagnosed with Addison's disease/adrenal insufficiency, which meant that when stable, Plaintiff may function normally, but during illness, he may be

ORDER - 15

incapacitated with fatigue. Tr. 749. Dr. Vickers also stated that, "[h]e may be periodically incapacitated due to this illness depending on the course." Tr. 749.

In April 2017, Dr. Vickers completed a "Medical Report" form and noted the diagnosis of Addison's disease. Tr. 772.  Symptoms were listed as periodic/intermittent severe fatigue, muscle and joint pains. Tr. 772. Dr. Vickers indicated that Plaintiff has to lie down 30-60 minutes per day two to three times per day due to fatigue. Tr. 772. He opined that work on a continuous basis would cause Plaintiff's condition to deteriorate because "stress can deteriorate his issues severely." Tr. 773. He further opined that Plaintiff would miss four or more days of work per month because "currently fatigue and pain are disabling." Tr. 773.

In November 2019, Matt Davies, M.D., completed a DSHS form for documentation of medical or disability condition. Tr. 973-75. He diagnosed adrenal insufficiency, Ehlers Danlos Syndrome, chronic gastrointestinal distress, depression and anxiety. Tr. 973. Dr. Davies indicated Plaintiff is unable to participate in work and is "severely limited," meaning unable to lift at least 2 pounds or unable to stand or walk. Tr. 973-74. Dr. Davies stated, "[h]e has long standing poor effort [illegible] with adrenal crisis type episodes with attempted normal work." Tr. 973, 1876.

The ALJ gave some of the same reasons for rejecting the opinions of Dr. Davies and Dr. Vickers. Tr. 1198-99. First, the ALJ noted that the opinions relied on the diagnosis of Addison's disease in stating that Plaintiff is too limited to work. However, the ALJ found this is inconsistent with the record showing that the

ORDER - 16

condition is not as disabling or as limiting as alleged. The ALJ noted the condition is effectively managed with medication and that treatment records consistently reflect a lack of any significant symptoms related to adrenal insufficiency. Tr. 1198. This analysis is necessarily based in part on the ALJ's evaluation of Plaintiff's symptom statements and involves much of the same evidence considered by the ALJ in that finding.  Because that evaluation was based on error, this reasoning is also called into question.

Second, the ALJ found the opinions inconsistent with Dr. Davies' earlier office visit note from August 2017 stating that, "[i]t is unlikely he is disabled on the basis of adrenal insufficiency." Tr. 981. This statement is neither inherently valuable nor persuasive because disability is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c). Unlike Dr. Davies' 2019 opinion, the 2017 comment does not include any functional assessment. Furthermore, the same note indicates Plaintiff "continued to struggle clinically." Tr. 981.  As such, Dr. Davies' statement is not evidence of nondisability and does not constitute a specific, legitimate reason for rejecting Dr. Vickers' and Dr. Davies' later opinions.

Third, the ALJ found the opinions appear to rely, at least in part, on Plaintiff's self-reported symptoms/limitations. Tr. 1198.  The ALJ's finding that Plaintiff's self-report of constant, debilitating fatigue is not fully reliable is based on error, as discussed above. This is therefore not a specific, legitimate reason for rejecting Dr. Vickers' and Dr. Davies' opinions.

ORDER - 17

With respect to Dr. Vickers' opinion, the ALJ also incorporated the analysis of the Appeals Council's November 4, 2019, decision. Tr. 289-94, 1199. In that decision, the Appeals Council noted a lack of treatment records supporting Dr. Vickers' opinion; specifically, medical records from December 2015 to June 2017 only documented two instances where Plaintiff complained of fatigue. Tr. 290, 292; *see* Tr. 874-972. Plaintiff asserts this finding is inaccurate but references only generally other records between August 2016 and Dr. Vickers' 2017 opinions.

The ALJ further found that Dr. Vickers' opinions are not supported by his own treatment notes which contain minimal exam findings and no evidence of adrenal crises. Tr. 1199. A physician's opinion may be rejected if it is unsupported by treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) Additionally, the ALJ noted that Dr. Vickers' exam findings were typically only that Plaintiff was ambulating well or appeared well. Tr. 1199 (citing Tr. 882, 886, 891). Plaintiff asserts Dr. Vicker's notes indicate he complained of worsening fatigue in August 2016 and of two weeks of increased fatigue in February 2017, Tr. 892, 907, and points out that double and triple "stress doses" were indicated for treatment several times. Tr. 883, 889, 892.

The ALJ also observed that Dr. Vickers' exam findings typically indicate only that Plaintiff was ambulating well. Tr. 1199. Plaintiff argues Dr. Vickers' opinion relates to fatigue, not ambulation, so normal findings in that area are generally irrelevant. However, the ALJ's point is that there are no or few abnormal

ORDER - 18

exam findings in Dr. Vickers' treatment notes when he assessed disabling limitations.

With respect to Dr. Davies' opinion, the ALJ also gave it less weight because it is an "accommodation opinion," meaning that Plaintiff wanted Dr. Davies to document his purported disability. Tr. 1199 (citing Tr. 1022). However, in the absence of other evidence undermining the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). The ALJ also improperly gave the opinion less weight because he improperly considered Dr. Davies' 2017 note that he did not think Plaintiff could get disability for his condition. Tr. 1199.

The ALJ further found that Dr. Davies' opinion is not supported by contemporaneous treatment notes in 2019 and 2020 which reflect Plaintiff denied symptoms related to renal insufficiency, Tr. 1199 (citing Tr. 1106, 1113), and it is inconsistent with a September 2019 report of Dr. Lu, who found that Plaintiff's Addison's disease is stable, his blood pressure is at goal, and there is "no reason for disability." Tr. 1199 (citing Tr. 1428, 1464). Plaintiff contends that steroid treatments and complaints of fatigue should override the ALJ's interpretation of these findings. ECF No 8 at 21.

All of this is to say that the ALJ's conclusions about the opinions of Dr. Vickers and Dr. Davies involve some erroneous and questionable findings. There

ORDER - 19

may be some merit to portions of the ALJ's findings, but reconsideration of the evidence on remand makes reassessment of the medical opinions necessary.

**C.     Step Five**

Plaintiff contends the ALJ failed to meet the step five burden to show that other jobs consistent with Plaintiff's RFC are available in significant numbers in the national economy. ECF No. 8 at 3-7.  Plaintiff makes two arguments: (1) that two of the jobs identified by the vocational expert are not consistent with the RFC finding; and (2) that the job numbers identified by the vocational expert are incorrect.   The Court does not reach these arguments as this matter is remanded on other grounds.

**REMEDY**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings.

A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). In the Ninth Circuit, the "credit-as-

ORDER - 20

true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and need not credit statements as true only because the ALJ made a legal error. *Id.* at 408.

Here, the ALJ made a legal error regarding the evaluation of Plaintiff's symptom testimony. Evaluation of the medical opinions is also based on error or questionable findings. The record has been fully developed. The case has twice been previously remanded, once by the Appeals Council and once because of an error in the record and not due to any substantive determination. Nonetheless, the Court concludes there are conflicts and ambiguities which must be resolved by the ALJ. The evaluation of Plaintiff's symptom statements and the medical opinions must be reconsidered on remand. The Court offers no opinion as to what the outcome on remand will or should be.

ORDER - 21

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly,

1.  Plaintiff's Brief, **ECF No. 8**, is **GRANTED** in part and denied in part. It is granted in part regarding Plaintiff's request to remand. It is denied in part regarding Plaintiff's request that the Court reverse the findings of the Commissioner and award benefits.

2.  Defendant's Brief, **ECF No. 16**, is **DENIED**.

3.  This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** March 16, 2026.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 22